**AFFIRM; and Opinion Filed June 27, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01270-CV

### REGINA DELL BROWN AND GWENDOLYN GABRIEL, Appellants
### V.
### MERRY OUTLAW, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-06513**

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Pedersen, III

Appellants Regina Dell Brown and Gwendolyn Gabriel and appellee Merry Outlaw formed a partnership to purchase, renovate, and sell a residence in Cedar Hill, Texas. The process culminated in appellants' filing suit against Outlaw and Outlaw's lodging counterclaims against appellants. A jury found in favor of Outlaw on most of those claims. Brown and Gabriel challenge the factual sufficiency of the evidence supporting the jury's findings that Gabriel wrongfully withdrew from the partnership, breached her fiduciary duty to Outlaw, intentionally interfered with Outlaw's agreement with Brown, and defamed Outlaw. Brown and Gabriel also contend that—in the absence of evidence supporting each of those findings—Outlaw could not have suffered any damages. We affirm the trial court's judgment.

# BACKGROUND

The three parties to this appeal had significant relationships before they entered into the partnership forming the basis of this appeal. Gabriel and Brown are sisters. Gabriel met Outlaw at a real estate seminar and subsequently assisted Outlaw in purchasing and renovating a number of rental properties. It is undisputed that Gabriel taught both Brown and Outlaw what they knew about real estate. The three women traveled together to Florida early in 2010 to examine a property Gabriel was considering purchasing. While they were there, they learned of the Cedar Hill residence (the Property) and became interested in working together on rehabilitating it.[1] After touring the Property, they agreed that they would purchase it, perform the necessary repairs and improvements, and sell it.

The women purchased the Property on May 21, 2010, for approximately $110,000. Gabriel and Outlaw contributed $39,000 each to the purchase price. Brown paid the $1000 earnest money and contributed $29,000 to the purchase price. They agreed that each of them would own one third of the Property.

The partnership agreement was not reduced to writing, and the partners gave conflicting testimony at trial concerning how they had agreed the proceeds from the sale would be divided. Appellants Gabriel and Brown testified that when the Property was sold, each partner was to receive (1) reimbursement for money contributed to repairs and improvements, "dollar for dollar," and then (2) one third of the profit. Outlaw testified that the partners intended to contribute equally to costs throughout the renovation process; thus, the proceeds were simply to be split three ways when the Property was sold.

---

[1] The legal description of the Property is "LOT 143, of LAKE RIDGE, SECTION 1, an Addition to the City of Cedar Hill, Dallas County, Texas."

The parties initially believed that the rehabilitation of the Property could be accomplished in four to eight months. But less than two months after the purchase, Gabriel withdrew from the project following what she called a "suspicious" withdrawal of $600 by Outlaw from the partners' joint account. Gabriel's relationships with her partners degenerated following her withdrawal. After Brown tried to resolve the $600-withdrawal issue with Gabriel, the sisters did not speak for more than a year. And Gabriel sent an email—read by Outlaw's family members—asserting, among other things, that Outlaw was a liar, a thief, and a con-artist. Outlaw and Brown continued with the project as they could. Approximately one year after the purchase, Brown signed a deed transferring all of her interest in the Property to Outlaw, "save and except" eight percent.

Gabriel and Brown sued Outlaw alleging fraud, deceptive trade practices, and breach of fiduciary duty. Their petition also sought sale of the Property and an equal division of the proceeds among Gabriel, Brown, and Outlaw. The city declared the house complete in January 2014, but efforts to sell the Property were not successful. In April 2015, Outlaw sought appointment of a receiver to sell the Property, and the trial court appointed first one, and then a second, receiver. The second receiver successfully sold the Property, netting $304,790.72, which was placed in the registry of the court.

The trial court granted summary judgment in favor of Outlaw on the deceptive trade practices claim. All other claims were tried to a jury, which found in favor of Outlaw on her counterclaims for wrongful withdrawal from the partnership, breach of fiduciary duty, intentional interference with the business relationship of Outlaw and Brown, and defamation.[2] The trial court's judgment awarded Outlaw $82,456.80 from Gabriel and $3,044.04 from Brown.[3]

This appeal followed.

---

[2] Gabriel and Brown did not appeal the jury's rejection of their claims for fraud and breach of fiduciary duty.

[3] The trial court's judgment also awarded Brown $6,083.20 from Gabriel, but that award has not been appealed.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

Each of the appellants' issues challenges the factual sufficiency of the evidence supporting one of the jury's findings. In considering a challenge to the factual sufficiency of the evidence, we review the entire record and may set aside the verdict only if it is against the great weight and preponderance of the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). A finding is against the great weight and preponderance of the evidence if it is clearly wrong, manifestly unjust, or "shocks the conscience." *Id.* Jurors are the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). When jurors choose to believe one witness and disbelieve another, we cannot impose our own opinions to the contrary. *Id.*

### Wrongful Withdrawal from the Partnership

In their first issue, Gabriel and Brown challenge the evidentiary support for the jury's finding that Gabriel wrongfully withdrew from the partnership. The trial court's charge instructed the jury on this issue, stating:

> A partner wrongfully withdraws if the partnership is formed for the completion of a specific undertaking and the partner voluntarily withdraws from the partnership before the undertaking is complete.

Neither party objected to this instruction. Likewise, neither party objected to the definition of "Partnership," which, according to the charge:

> refers to the arrangement between Regina Brown, Gwendolyn Gabriel, and Merry Outlaw to purchase, repair and/or rehabilitate, and sell for profit the [Property.]

Appellants contend that nothing in the parties' agreement required any partner to stay in the project until the actual sale of the house, in effect arguing that the partnership was not "formed for the completion of a specific undertaking" that included sale of the Property. But the charge's very definition of the parties' undertaking, the "Partnership," included their arrangement to

–4–

purchase, repair and/or rehabilitate, and *sell* the Property for profit. The jury was not free to disregard the court's instructions when making its finding.

The evidence does not support appellants' argument either. It is true that the parties testified to conflicting understandings of how the repairs and improvements to the Property were to be financed and how the proceeds of the sale were to be divided. But throughout trial, all three parties testified that their agreement was to purchase, renovate, and sell the Property. And Gabriel's own testimony was specific: "I made an agreement that I would contribute to the project until we got it finished." Nevertheless, it is undisputed that Gabriel withdrew from the partnership effective July 2, 2010, less than two months after the purchase of the Property and some seven years before it was sold.

The jury's finding that Gabriel wrongfully withdrew from the partnership was supported by the parties' testimony concerning the purpose of their partnership. The finding is not clearly wrong or manifestly unjust. *See Golden Eagle Archery*, 116 S.W.3d at 761. We overrule appellant's first issue.

Appellants' second issue avers that without sufficient evidence of wrongful withdrawal, there could be no damages to Outlaw. But we have concluded that the record supports the jury's finding of wrongful withdrawal. Accordingly, we overrule appellants' second issue.

**Breach of Fiduciary Duty**

The trial court instructed the jury that a fiduciary relationship existed between Gabriel and Outlaw "as partners in the real estate project." In their third issue, Gabriel and Brown challenge the factual sufficiency of the jury's finding that Gabriel breached that fiduciary duty to Outlaw.

Appellants contend that the only possible violation of Gabriel's duty was her withdrawal from the partnership if it had been wrongful, and they re-assert their argument that the evidence of

such a wrongful withdrawal is insufficient. We have concluded that ample evidence supports the jury's finding on wrongful withdrawal, so that argument fails here as well.

Moreover, the trial court's charge gave the jury guidance on what conduct by Gabriel would amount to a breach of her fiduciary duty to Outlaw. The court instructed jurors that:

> To prove Gwendolyn Gabriel failed to comply with her duty, Merry Outlaw must show:
>
> 1. the transaction in question was not fair and equitable to Merry Outlaw; or
>
> 2. Gwendolyn Gabriel did not make reasonable use of the confidence that Merry Outlaw placed in her; or
>
> 3. Gwendolyn Gabriel failed to act in the utmost good faith or exercise the most scrupulous honesty toward Merry Outlaw; or
>
> 4. Gwendolyn Gabriel placed her own interests before Merry Outlaw's, used the advantage of her position to gain a benefit for herself at the expense of Merry Outlaw, or placed herself in a position where her self-interest might conflict with her obligations as a fiduciary; or
>
> 5. Gwendolyn Gabriel failed to fully and fairly disclose all important information to Merry Outlaw concerning the transaction.[4]

The record supports the jury's finding that—employing one or more of these standards—Gabriel breached her fiduciary duty. For example, one standard required evidence that Gabriel did not make reasonable use of the confidence that Outlaw placed in her. Gabriel testified that "when we first started we thought I was going to be doing the most work and I was going to possibly be the one putting in the most money." She testified that she had built her own large home and that she had done "all the labor" on the homes that Outlaw had purchased as rental properties. Gabriel believed she would be performing most of the labor on this project as well. Outlaw testified that when the three women had decided to buy the Property, she was counting on Gabriel's expertise as well as her monetary contributions for repairs and improvements. Given Gabriel's early withdrawal, jurors could have found that she did not "make reasonable use of the confidence that

---

[4] Reading the trial court's instruction as a whole, we understand the court's reference to the "transaction" to mean "the real estate project."

Merry Outlaw put in her." Another standard listed in the charge required evidence that Gabriel had placed her own interest before Outlaw's. Gabriel acknowledged that the parties had "all committed to contribute as much as we possibly could, given our individual circumstances." Despite this commitment, Gabriel withdrew from the partnership and left Outlaw and Brown to complete the project on their own. Jurors could have found that Gabriel had "placed her own interest before Merry Outlaw's."

We conclude the jury's finding that Gabriel breached her fiduciary duty to Outlaw is supported by testimony from both Gabriel and Outlaw. It is neither clearly wrong nor manifestly unjust. *See Golden Eagle Archery*, 116 S.W.3d at 761. We overrule appellants' third issue.

### Intentional Interference with Agreement

In their fourth issue, appellants challenge the factual sufficiency of the evidence supporting the jury's finding that Gabriel intentionally interfered with Outlaw's agreement with Brown after July 2, 2010, the effective date of Gabriel's withdrawal from the partnership. Appellants argue that Gabriel could not have interfered with the original partnership agreement between Outlaw and Brown, because Brown continued to work on the project with Outlaw after Gabriel withdrew.

However, in May of 2011, Outlaw and Brown modified their agreement. Brown signed a Special Deed granting Outlaw all of her interest in the Property "save and except an overall 8–percent interest." The parties offered conflicting testimony concerning both the reason for the modification and Brown's understanding of its effect.

Outlaw testified that Brown agreed to give up part of her original share because she was having difficulty keeping up with her monetary contributions to the project. Benjamin Stephens, an attorney for Outlaw, testified that he drafted the deed and that he went over it with Brown to be sure she understood how much of her interest she was transferring. When they "got that straight," Brown signed the deed. Stephens testified that it was his understanding from talking with Brown

and Outlaw that Brown was making the transfer because she could no longer afford to contribute sufficient money for her share of the expenses.

Brown testified that Outlaw pressured her into signing the "special piece of paper," which she did not understand was a deed. She testified further that she thought she was making only a conditional transfer related to Gabriel's getting her money back at the time of sale. She believed the transfer, if it occurred, would be only eight percent of her interest. And she denied that Stephens explained the true nature of the deed to her.

Regardless of what prompted the signing of the deed, Brown and Outlaw both testified that Brown continued to work at the Property through the remainder of 2011. Brown testified that she continued to make deposits to the joint account through that time as she was able. But in January 2012, Gabriel contacted Brown and, according to Brown, Gabriel "show[ed]" her that she had in fact deeded over a significant portion of her interest in the Property to Outlaw. After that, Brown did not contribute any more funds and stopped working at the Property.

Given the conflicting evidence, jurors could have disbelieved Brown's testimony that she did not understand the effect of the Special Deed. *See City of Keller*, 168 S.W.3d at 819. If jurors did disbelieve Brown, they could have reasonably inferred that when Gabriel contacted her in January 2012—after more than a year of Gabriel's refusing to talk to her—Gabriel persuaded Brown to stop cooperating with Outlaw on the project. Brown acknowledged that, shortly thereafter, the sisters contacted an attorney to attempt to have Outlaw "change" the modification of Brown's agreement. We conclude sufficient evidence supports the jury's finding that Gabriel interfered with the modified partnership agreement between Brown and Outlaw. The finding is neither clearly wrong nor manifestly unjust. *See Golden Eagle Archery*, 116 S.W.3d at 761. We overrule appellants' fourth issue.

In Gabriel and Brown's fifth issue, they contend that—without sufficient evidence of either a breach of fiduciary duty or interference with an agreement—no damages could result to Outlaw. We have concluded that the evidence was sufficient to support both of those claims. Accordingly, we overrule appellants' fifth issue.

## Defamation

In their sixth issue, Gabriel and Brown contend the evidence is factually insufficient to support the jury's finding that Gabriel defamed Outlaw. The tort of defamation requires publication of a false statement of fact to a third person. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). Jurors were asked whether nine separate allegations made by Gabriel concerning Outlaw were defamatory, and they responded "yes" to seven.[5] Appellants challenge the jury's responses on a single ground: they contend that all seven allegations were substantially true and, thus, could not be defamatory. Accordingly, if the evidence is factually sufficient to establish that any one of the listed allegations is *not* true, then we must overrule this issue.

The third allegation considered by the jury states that Outlaw "stole $600," referring to Outlaw's withdrawal of that sum from the partnership's joint account on June 28, 2010. A person steals if she "take[s] or appropriate[s] property without right or leave and with intent to keep or make use of [the property] wrongfully." WEBSTER'S NEW COLLEGIATE DICTIONARY 1129 (1981). In this case, the record establishes that all three partners had the right to withdraw funds from the account to use for the project. Thus, Outlaw was not taking the funds without right or leave. But Gabriel argues that Outlaw's withdrawing the funds when she did depleted the account so that Gabriel could not make a planned purchase without causing an overdraft. The record indicates that the account was depleted at the end of June for at least two reasons: Gabriel had withdrawn approximately $3900, and Brown had mistakenly withdrawn $100. But after realizing her mistake,

---

[5] It is undisputed that the allegations were made by Gabriel in her July 10, 2010 email.

Brown notified Outlaw that she had rectified it by depositing $100 together with her regular $500 deposit. Brown informed Outlaw that she could use those recently deposited funds. Outlaw then told Brown that she was withdrawing the money and why.[6] When Gabriel accused Outlaw of stealing the $600, Brown sent an email assuring Gabriel that Outlaw had not stolen the funds. Brown explained all her communications with Outlaw and informed Gabriel that Outlaw had not caused the overdraft.

After reviewing all the evidence, we conclude that reasonable jurors could have believed that Outlaw had the right to withdraw the $600 on June 28, 2010. Thus, Gabriel's allegation that Outlaw stole those funds was not true, and the jury's finding that the allegation was defamatory was not clearly wrong or manifestly unjust. *See Golden Eagle Archery*, 116 S.W.3d at 761. We overrule appellants' sixth issue.

And finally, in their seventh issue, Gabriel and Brown assert that without sufficient evidence of defamation, the damages award for that claim must fall. Again, we have concluded that factually sufficient evidence supports the jury's finding on defamation. Therefore, we overrule appellants' sixth issue as well.

## CONCLUSION

We affirm the trial court's judgment.

171270F.P05

/Bill Pedersen, III/
_____
BILL PEDERSEN, III
JUSTICE

---

[6] Although the record does not disclose Outlaw's specific reason for withdrawing the $600, appellants do not contend that she did so with the intent to keep the funds or to use them improperly. *See id.*

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REGINA DELL BROWN AND
GWENDOLYN GABRIEL, Appellants

No. 05-17-01270-CV        V.

MERRY OUTLAW, Appellee

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-06513.
Opinion delivered by Justice Pedersen, III.
Justices Brown and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MERRY OUTLAW recover her costs of this appeal from appellants REGINA DELL BROWN and GWENDOLYN GABRIEL.

Judgment entered this 27th day of June, 2019.